IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DEWAYNE BEARCHILD, | CV 14–12–H–DLC |
| Plaintiff, | |
| vs. | ORDER |
| LARRY PASHA, | |
| Defendant. | |

Before the Court are several pre-trial motions, including three motions in limine (Docs. 309; 311; 315) and one motion to compel (Doc. 316). The Court will address each motion in turn. Because the parties are familiar with this case, the Court discusses the underlying factual background only where necessary to understand the its conclusions.

## I.      Motions in Limine.

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Such motions do not "resolve factual disputes or weigh evidence" but rather focus on whether the evidence at issue is "inadmissible on all potential grounds." *United States v. Meech*, 2020 WL 5517029, *4 (D. Mont. 2020) (CR 20-13-BU-DLC). In adjudicating motions in limine, this Court is

afforded broad discretion.  *Id.*  "However, in limine rulings are not binding" and this Court "may always change [its] mind during the course of a trial."  *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).  Indeed, specific evidentiary rulings are often best made in the context of a trial.  With these principles in mind, the Court turns its attention to the three motions in limine pending before it.

### A.      Motion in Limine Regarding Mr. Bearchild's Prior Conviction (Doc. 309).

Plaintiff Dewayne Bearchild seeks to exclude any reference to his prior conviction for incest, either directly or for impeachment purposes, on the basis that it is irrelevant and unfairly prejudicial.  (*See generally* Doc. 310.)  Defendant Larry Pasha argues that evidence regarding Mr. Bearchild's prior conviction is relevant to his claim for emotional distress damages.  Mr. Pasha concedes, however, that Mr. Bearchild's "character for truthfulness cannot be impeached" based on his prior conviction.  (Doc. 327 at 2.)  Accordingly, the Court will not address the arguments regarding impeachment, but will enter a preliminary ruling excluding the evidence in certain respects and reserving ruling in other respects.

Generally, only relevant evidence is admissible.  Fed. R. Evid. 402. Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Although relevant, evidence may nonetheless be excluded "if its probative value is substantially outweighed by a

2

danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The Court does not find evidence regarding Mr. Bearchild's prior incest conviction relevant to issues in this case, which focus on whether Mr. Pasha sexually assaulted Mr. Bearchild.  Specifically, Mr. Bearchild's prior conviction does not render the fact that Mr. Pasha sexually assaulted him more or less probable.  Even assuming the nature of Mr. Bearchild's prior conviction enjoyed some probative value, it is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403; *see also Scott v. Lawrence*, 36 F.3d 871, 874 (9th Cir. 1994) (stating, "we hardly need state that [sex offense] convictions are among the most prejudicial types of information the jury could learn about the plaintiff in a civil suit").  Accordingly, the Court will grant Mr. Bearchild's motion in limine to the extent it seeks to exclude evidence regarding the nature of his prior conviction as proof that Mr. Pasha did or did not commit a sexual assault during the events in question.

The admissibility of such evidence as to the issue of emotional distress damages presents a more difficult question.  As Mr. Pasha points out, there is authority in the Ninth Circuit for the proposition that when a plaintiff seeks damages following a negative interaction with law enforcement, prior negative

interactions with law enforcement become "highly relevant to [the] damages claim." *Halvorsen v. Baird*, 146 F.3d 680, 686 (9th Cir. 1998); *see also Willis v. Mullins*, 2019 WL 1116200, *4 (E.D. Cal. 2019) ("When a plaintiff asserts that a police interaction caused mental distress, a defendant is allowed to bring up other instances of plaintiff-police interaction as potential independent sources of that mental distress").  The Court finds these principles apply equally to prison official interactions.

The admissibility of such evidence, however, is not automatic.  *Willis*, 2019 WL 1116200 at *5.  Instead, as the Eastern District of California has observed while a plaintiff may possibly "open the door for additional information about" their prior convictions, "it may only be the *fact of incarceration* that is relevant for damages rather than" the *nature of the conviction itself.  Id.* (emphasis added).  Put another way, the fact that Mr. Bearchild had prior interactions with law enforcement (including prison officials) both before and after his conviction for incest may very well be relevant to his claim for emotional distress damages in this case.  But it does not follow that the nature of his conviction (i.e. incest) is relevant to this evidentiary contention.

The Court will adhere to the approach outlined in *Willis*.  If Mr. Bearchild elects to seek emotional distress damages at trial, Mr. Pasha will be permitted to introduce evidence that Mr. Bearchild's prior interactions with law enforcement

both before and after his conviction are potential independent sources of such distress. But the Court is reluctant, absent additional developments at trial, to permit introduction of evidence regarding the nature of his prior conviction. *Id.* (concluding that a "history of sexual offences is extremely prejudicial" and that "the court would be hesitant to allow such evidence to be presented by Defendants unless that aspect of Plaintiff's past can be shown to be especially probative of damages").

To summarize, the Court will grant Mr. Bearchild's motion in limine to the extent it seeks the exclusion of evidence regarding the nature of his prior conviction, with respect to the question of whether he was sexually assaulted on the day in question.[1] The Court will reserve ruling on the issue of whether Mr. Pasha may introduce evidence regarding the nature of Mr. Bearchild's prior conviction, with respect to his claim for emotional distress damages.

### B. Motion in Limine Regarding Opinions of Patrick Sheehan (Doc. 311).

Mr. Bearchild moves this Court in limine to preclude Mr. Pasha from offering expert opinions through Patrick Sheehan regarding whether a particular

---

[1] The Court notes that because Mr. Bearchild alleges he was sexually assaulted by Mr. Pasha while incarcerated, the *fact* that he was convicted of a crime leading to such incarceration is obviously probative. In the Court's view, this fact was covered through a stipulation reached in advance of the first trial. (Doc. 242 at 2 (stating "On November 4, 2012, Mr. Bearchild was a state prisoner, lawfully incarcerated at Montana State Prison")). The parties have reached a similar stipulation in advance of the second trial. (Doc. 348 at 3.) Unless circumstances change, the Court does not intend to permit the jury to learn more.

pat-down search complies with standards developed by the American Correctional Association ("ACA").  (*See generally* Doc. 312.)  The crux of this motion is that Mr. Sheehan himself admitted he is unqualified to provide such testimony.  (*Id.* at 5.)  Mr. Pasha responds by stating that "he has no objection to [Mr. Sheehan] not being allowed to mention ACA standards," but maintains that Mr. Bearchild should not be permitted to do so either.  (Doc. 328 at 3.)

Nothing in the record indicates that either party intends to make ACA standards a part of their respective cases.  The Court agrees that Mr. Sheehan, by his own admission, is unqualified to offer expert testimony regarding whether a particular pat-down search complies with ACA standards.  (Doc. 312-2 at 4–6.) Accordingly, the Court will grant Mr. Bearchild's motion as to this issue and also enters a preliminary ruling excluding evidence from Mr. Bearchild regarding whether a particular pat-down search complies with ACA standards.

### C.    Motion in Limine Regarding Other Complaints (Doc. 315).

Mr. Pasha seeks exclusion of any evidence regarding "other alleged complaints against him, including for allegedly improper searches."  (Doc. 317 at 2.)  Mr. Pasha couches this argument under Rules 404(b) and 403.  (*Id.* at 2–8.) Alternatively, Mr. Pasha requests that this Court adhere to its ruling from the first trial, (*Id.* at 9–10), which permitted introduction of seven completed investigative reports from 2014 and 2015 that involved similar allegations to those advanced by

6

Mr. Bearchild.  (Doc. 268 at 17–26.)  The precise substance of this prior ruling is outlined below.

In response to Mr. Pasha's motion, Mr. Bearchild filed a Notice of Intent to Offer Evidence Under Rule 415.  (*Ex Parte* Doc. 335-2.)  This notice evidences Mr. Bearchild's intent to introduce: (1) the seven completed investigative reports admitted during the first trial;  (2) seven additional "PREA reports," witness statements and "other relevant PREA-related business records" regarding incidents occurring between 2017 and 2019; (3) "business records" containing statements made by various Montana State Prison officials during a November 2013 "PREA-related investigation;" and (4) live testimony from "four current or former" correction officers and one case manager, regarding these prior complaints. (*See generally Id.* at 2–5.)  Based on this notice, and Mr. Pasha's motion, the Court will issue in limine rulings regarding the foregoing evidence.

The evidence at issue arguably implicates both Rule 404(b) and 415. Because Rule 415 supersedes the more restrictive aspects of Rule 404(b), however, and because Mr. Bearchild specifically relies on Rule 415, the Court focuses its inquiry there.  *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004).  Rule 415 provides that in "a civil case involving a claim for relief based on a party's alleged sexual assault," this Court "may admit evidence that the party committed any other sexual assault."  Fed. R. Evid. 415(a).  The rule additionally provides

7

that such "evidence may be considered as provided in" Rule 413 and "does not limit the admission or consideration of evidence under any other rule." *Id.*

Rule 413 instructs that evidence introduced under Rule 415 "may be considered on any matter to which it is relevant," Fed. Rule of Evid. 413(a), including the defendant's *propensity* to commit the sexual assault complained of in the underlying civil action. *United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001) (noting that "Rules 413 through 415 . . . remov[e] the longstanding ban on propensity evidence in criminal" and civil trials).[2]  Important for this case, such acts of sexual assault may have occurred either before or after the acts complained of in the instant proceeding. *Sioux*, 362 F.3d at 1246–47.

As this Court has previously recognized, the foregoing demonstrates that "three criteria must be satisfied" for Rule 415 to apply: (1) the defendant must be accused of sexual assault in the instant proceeding; (2) the other acts in question must constitute sexual assault; and (3) the "proffered evidence must be relevant." *Yarlott*, 2020 WL 6393894 at *3; *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000).  Even if Rule 415 does apply, admission is not preordained, and the evidence may nonetheless be excluded under Rule 403.

---

[2] Because of this, Congress' adoption of Rules 413–415 "drew—and continues to draw— harsh criticism." *United States v. Yarlott*, 2020 WL 6393894, *2–3 (D. Mont. 2020); *see also LeMay*, 260 F.3d at 1032 (Paez, J. concurring in part and dissenting in part) ("Rules 413, 414, and 415 were extraordinarily controversial at the time of their passage").  "[W]ell reasoned or not," this Court must apply the rules as written and interpreted. *Yarlott*, 2020 WL 6393894 at *2–3.

*Glanzer*, 232 F.3d at 1268–69 (affirming district court's exclusion of Rule 415 evidence under 403).  In undertaking the Rule 403 inquiry, the Court addresses a wide variety of non-exclusive factors.  *LeMay*, 260 F.3d at 1032 n.1.  The Court will enumerate the factors relevant to this case below.

Because of its overarching applicability, the Court will address the first criteria for admitting Rule 415 evidence now—whether the defendant is accused of sexual assault in the underlying proceeding—before addressing the second and third criteria in the context of each category of other acts evidence described above.  Under Rule 415, "sexual assault means a crime under federal law or under state law" involving "contact, without consent, between any part of the defendant's body" and "another person's genitals or anus."  Fed. R. Evid. 413(d)(2).  Mr. Pasha is accused of engaging in such conduct in this case.

In this action, Mr. Bearchild alleges "his Eighth Amendment rights were violated when he was sexually assaulted during the course of a pat-down search" performed by Mr. Pasha.  *Bearchild v. Cobban*, 947 F.3d 1130, 1134 (9th Cir. 2020).  These allegations involve non-consensual contact between Mr. Pasha's body and Mr. Bearchild's genitals.  *Id.* at 1135.  Willfully sexually assaulting a prison inmate in a manner violative of that inmate's Eighth Amendment rights is a

criminal offense under federal law.  18 U.S.C. § 242.[3]  Such conduct would also

constitute a crime under Montana law.  Mont. Code Ann. §§ 45-2-101(67), 45-5-

501(1)(b)(v), 502.  Accordingly, the first criteria is satisfied and the Court will

apply the remaining criteria to each category of prior acts evidence proffered by

Mr. Bearchild.

### 1.    PREA Investigation Reports Introduced at the First Trial (Docs. 335-3 to 335-10).

The evidence introduced during the first trial was limited to "actual,

completed PREA investigation" reports "that went to the same end point as the

PREA investigation" regarding Mr. Pasha's pat-down search of Mr. Bearchild.

(Doc. 268 at 18.)  Encompassed within this category are seven PREA investigation

reports generated between March 2014 and July 2015.  (*Ex Parte* Docs. 335-3 to

335-10.)  All of these reports involve allegations that Mr. Pasha inappropriately

touched an inmate's genitals or anus during the course of a pat-down search.  (*See*

*generally id.*)  Operating under the standards governing PREA investigations,

internal prison investigators found the allegations within all seven investigation

reports to be unsubstantiated.  (*Id.*)

---

[3] Mr. Bearchild also relies on 18 U.S.C. § 2244, but a plain-reading of this statute reveals it only proscribes abusive sexual contact occurring in federal prisons or federally-contracted facilities, not state-run institutions like the Montana State Prison.

10

At the first trial, the Court concluded that although these seven completed PREA reports were hearsay, they were nonetheless admissible under Rule 803(a)'s public records exception. (Doc. 268 at 21.) This conclusion remains unchallenged in the run up to the second trial. The remainder of the Court's analysis focused on Rule 404(b), with Rule 415 providing "an additional basis for admission." (*Id.* at 21–24.) As noted above, however, because Mr. Bearchild has specifically provided notice of his intent to introduce the evidence under Rule 415, the Court begins and ends its inquiry there.

Turning to the second criteria—whether the other acts evidence constitutes sexual assault—the Court looks to federal and state law as it did when assessing the first criteria above. Fed. R. Evid. 413(d)(2). All of the seven previously introduced PREA reports involve allegations strikingly similar to those complained of by Mr. Bearchild in this case. As discussed above, the allegations Mr. Bearchild has leveled involve conduct amounting to criminal sexual assault under both Montana and federal law. 18 U.S.C. § 242; Mont. Code Ann. §§ 45-2-101(67), 45-5-501(1)(b)(v), 502. Accordingly, the Court finds the second criteria is satisfied.

In urging this Court to revisit its prior ruling on these reports, Mr. Pasha maintains that there is insufficient evidence the other acts investigated in the reports actually occurred to justify admission. (Doc. 317 at 2–4.) For good measure, Mr. Pasha points out that the reports themselves indicate the claims

11

contained therein are unsubstantiated.  (*Id.* at 4.)  Mr. Bearchild argues that the investigative reports sufficiently establish the veracity of the other acts to permit admission under Rule 415.  (*Ex Parte* Doc. 335-1 at 13–14.)

In determining whether there is sufficient evidence that a prior act occurred, this Court applies the rule of conditional relevance pronounced by Federal Rule of Evidence 104(b).  *United States v. Norris*, 428 F.3d 907, 913–14 (9th Cir. 2005). In applying this rule, the Court "simply examines all the evidence in the case and decides whether the jury could" could find the other acts were committed "by a preponderance of the evidence."  *Id.* at 914.  In this case, all of the investigative reports at issue contain allegations of sexual assault from victims.  (*See Ex Parte* Docs. 335-3 to 335-10.)  The Court finds this alone is enough to permit the evidence to go the jury.  *United States v. Deputee*, 714 Fed. Appx. 778, 779–80 (9th Cir. 2018) (unpublished disposition); *United States v. Redlightning*, 624 F.3d 1090, 1120 (9th Cir. 2010) ("[t]here are many ways to prove at trial that a defendant committed a different sexual assault").

The fact that the investigation reports themselves find the allegations to be unsubstantiated is of little consequence.  Those investigative reports are operating under PREA, and, consequently, rest their conclusions on PREA's more restrictive definitions.  *See, e.g.,* 34 U.S.C. § 30309(11) (limiting "sexual fondling" under PREA to contact initiated "*for the purpose of sexual gratification*") (emphasis

added).  But "sexual assault" under Rule 415, includes actions done only to humiliate or harass.  Mont. Code Ann. §§ 45-2-101(67), 45-5-501(1)(b)(v), 502; *Bearchild*, 947 F.3d at 1144–45.  The reports themselves contain sufficient evidence that such events occurred to satisfy the conditional relevance standard outlined above.  In sum, the second criteria is satisfied as to the PREA reports previously introduced.[4]

As to the third criteria—whether the other acts are relevant—the Court has no trouble concluding that they are.  Because Rule 415 is admissible for propensity purposes, *LeMay*, 260 F.3d at 1024, "it is generally accepted" that such evidence "is relevant and in conformity with the standards set out in" Rules 401 and 402. *Glanzer*, 232 F.3d at 1268.  The Court finds that to be true in this case.  The prior acts of sexual assault contained within the reports at issue makes it more likely that Mr. Pasha sexually assaulted Mr. Bearchild when performing a pat-down search in November 2013.  In short, the third criteria is satisfied.

Having concluded that the PREA reports introduced at the first trial are admissible under Rule 415, the Court addresses whether they should nonetheless be excluded under Rule 403.  *Thornhill*, 940 F.3d at 1118.  When applying Rule

---

[4] The Court wishes to be clear, however, that Mr. Pasha is, of course, permitted to challenge the veracity of these reports in front of the jury, including, that the allegations were found to be unsubstantiated by the PREA investigator and their veracity rests on the unsworn statements of the complaining witness.  In other words, the Court's conclusion that the evidence at issue meets the threshold admissibility requirements imposed by the federal rules, should not be construed as endorsement for the proposition that the other acts of sexual assault indisputably occurred.

13

403 to Rule 415 evidence, the Ninth Circuit has "previously suggested that a district court evaluate the following nonexclusive factors," including:

(1)     the similarity of the prior acts to the acts charged;

(2)     the closeness in time of the prior acts to the acts charged;

(3)     the frequency of the prior acts;

(4)     the presence or lack of intervening circumstances; and

(5)     the necessity of the evidence beyond the testimonies already offered at trial.

*Id.* at 1118.

As to the first factor, the other acts at issue and the acts complained of by Mr. Bearchild in this case are essentially identical.  All encompass allegations that Mr. Pasha inappropriately touched an inmate's genitals or anus while performing a pat-down search.  The same is true of the second and third factors.  The alleged sexual assault of Mr. Bearchild occurred on November 4, 2013, *Bearchild*, 947 F.3d at 1135, and, the seven other acts stem from March 2014 to July 2015, (*Ex Parte* Docs. 335-3 to 335-10).  As such, they are both frequent and temporally close to the acts complained of by Mr. Bearchild.  *See Thornhill*, 940 F.3d at 1120. The first three factors weigh in Mr. Bearchild's favor.

The fourth factor—presence or lack of intervening circumstances—does not appear to be applicable to this case.  *Id.*; *LeMay*, 260 F.3d at 1029.  The fifth

factor—necessity of the evidence beyond the testimonies already offered[5] at trial—also weighs in Mr. Bearchild's favor.  In order to prevail under this factor, the other acts evidence need not "be *absolutely necessary* to the [plaintiff's] case . . . it must simply be helpful or *practically necessary*."  *Thornhill*, 940 F.3d at 1120 (emphasis original).  The other acts evidence in this case is both helpful and practically necessary.

Because Rule 415 evidence can be admitted for propensity purposes, it can bolster cases in which the credibility of witnesses will be at issue and there are few eyewitnesses beyond the plaintiff and defendant.  *Id.* at 1120–21; *LeMay*, 260 F.3d at 1029.  Mr. Bearchild's case is undoubtedly assisted by the seven prior PREA investigative reports, and they are highly probative in establishing a modus operandi of misconduct, which is a well-established use of other acts evidence. *See United States v. Gonzalez*, 533 F.3d 1057, 1063 (9th Cir. 2008) (applying Rule 404(b)).  Indeed, the entire purpose of Rule 415 is to alleviate the unique evidentiary difficulties present in sexual assault cases.  *Yarlott*, 2020 WL 6393894, at *2.  This factor also weighs in Mr. Bearchild's favor.

Having weighed the applicable factors, the Court concludes that the probative value of the previously introduced reports is not substantially

---

[5] Although this factor is phrased in the past tense, the Ninth Circuit has specifically held that a district court is not prohibited from ruling on the admissibility of Rule 413–415 evidence before trial.  *Thornhill*, 940 F.3d at 1121–22.

15

outweighed by any danger of unfair prejudice.[6]   In sum, in revisiting its prior ruling

at the invitation of Mr. Pasha, the Court concludes that the seven PREA

investigative reports introduced at the first trial (*Ex Parte* Docs. 335-3 to 335-10)

are admissible under Rule 415 and that Rule 403 does not otherwise bar their

admission.   Mr. Pasha's motion in limine (Doc. 315) as to the previously

introduced reports will be denied.

The Court wants to be clear, however, that the foregoing ruling is far from a

"blank check," *Sioux*, 362 F.3d at 1244, and the Court will impose various

"procedural safeguards" in an attempt to mitigate the prejudicial effect of such

evidence.   *Yarlott*, 2020 WL 6393894 at *7.   First, Mr. Bearchild shall limit his

presentation of the prior acts evidence to that "necessary to convey the essential

facts."   *Id.* (citing *United States v. Erramilli*, 788 F.3d 723, 726 (7th Cir. 2015)).

Second, the Court will read a limiting instruction at the time the evidence is offered

and include that instruction in the final jury instructions.   *Id.*[7]   The Court next

---

[6] To the extent Mr. Pasha argues that such other acts evidence risks confusing the jury or poses an undue risk of prejudice as to the issue of punitive damages (Docs. 317 at 6–7; 335-1 at 25), the Court is confident that well-crafted jury instructions regarding such damages can alleviate those issues, if the Court finds such damages to be applicable in this case. The Court will also reserve ruling on the issue of limiting testimony to those witnesses with percipient knowledge.

[7] The Court will settle the precise language of the instruction to be read when the evidence is offered with the parties at the final pre-trial conference.   The Ninth Circuit has formulated a model instruction for 413–414 evidence in the criminal context.   *See* Ninth Cir. Model Crim. Jury Instrs. § 2.11.   The Court will rely heavily on the language in this model instruction, while also paying attention to the limiting instructions at issue in *Lemay*, 260 F.3d at 1024 and *Erramilli*, 788 F.3d at 730–31.

examines the seven additional PREA investigation reports Mr. Bearchild seeks to

admit under Rule 415.

### 2.    New PREA Investigation Reports (Docs. 335-11 to 335-17).

The seven additional PREA Investigation Reports involve nearly identical

allegations to those found in the reports introduced at the first trial described

above.  (*Ex Parte* Docs.  335-11 to 335-17.)  Specifically, the new reports are

composed of PREA investigation reports generated following an inmate's claim

that Mr. Pasha inappropriately touched their genitals and/or anus during a pat-

down search.  (*Id.*)  Accordingly, the entire analysis outlined above with respect to

the previously admitted reports, applies with nearly equal force to the seven new

reports.

As discussed at length above, all criteria for admission under Rule 415 are

satisfied because Mr. Pasha is accused of sexual assault in this case, the new

reports outline other acts of sexual assault, and such other acts are relevant to the

issues in this case.  *See Glanzer*, 232 F.3d at 1268.  In urging this Court to confine

its admission to the PREA investigative reports introduced at the first trial, Mr.

Pasha argues the new reports are too remote in time to justify admission,

cumulative, and confusing.  (Doc. 317 at 9–11).  Mr. Pasha also argues their

admission would be unfair because he specifically removed Bill Weddington from

his witness list based on Mr. Bearchild's purported representation that events after November 2013 would be irrelevant to this case. (*Id.* at 11.)

With respect to Mr. Pasha's first argument, the Court does not find that the new reports are sufficiently different from the reports introduced at the first trial to shift the balance of the Rule 403 analysis performed above. They are not too remote in time and their probative value is not *substantially* outweighed by the confusion and cumulative concerns raised by Mr. Bearchild. As to Mr. Pasha's argument regarding his removal of Mr. Weddington from his witness list, Mr. Bearchild made clear he was not conceding or arguing that "PREA complaints filed by other inmates against" Mr. Pasha were irrelevant. (Doc. 295 at 3.) The Court will admit the new reports (*Ex Parte* Doc. 335-11 to 335-17) at trial under Rule 415, if offered, and Mr. Pasha's motion in limine (Doc. 315) is denied to extent it seeks their exclusion.

### 3. Incident Reports and Other Documents Regarding a November 13, 2013 PREA Investigation (Doc. 335-18.)

Although not explicitly captured within Mr. Pasha's motion in limine, the Court finds it prudent to address the admissibility of the third category of evidence contained within Mr. Bearchild's Rule 415 notice. (*Ex Parte* Doc. 335-2 at 1.) This category includes several incident reports prepared in response to a pat-down search performed by Mr. Pasha in November of 2013. (*Id.* at 3–4.)

The Court will enter a preliminary ruling excluding this evidence. As Mr. Bearchild recognizes, (*Ex Parte* Doc. 335-1 at 18 n.2), this sort of evidence was excluded during the first trial on the grounds that they were "simply . . . incident report form[s]," lacked similarity because they did not evidence a formal PREA investigation, and the risk of unfair prejudice and confusion substantially outweighed their probative value. (Doc. 268 at 19.) The Court will adhere to this ruling. Even if the documents were admissible hearsay, as Mr. Bearchild argues, (*Ex Parte* Doc. 335-1 at 18 n.2), the Court finds that in light of the 14 other PREA Investigation reports already admitted, exclusion of these additional incident reports is demanded by Rule 403's concerns regarding unfair prejudice, confusion, and the needless presentation of cumulative evidence.

### 4.	Live Testimony Regarding Evidence in Categories 2 & 3 Outlined Above (*Ex Parte* Doc. 335-2 at 4.)

Mr. Bearchild's notice also evidences an intent to introduce "live testimony . . . in connection with" the incidents outlined in the second (new PREA investigative reports) and third (incident reports) categories of evidence discussed above. (*Ex Parte* Doc. 335-2 at 4.) The Court has admitted the former but excluded the latter. Consequently, the Court will enter a preliminary evidentiary ruling admitting live testimony aimed at discussing the events at issue in the previously admitted PREA investigative reports and excluding live testimony aimed at discussing the events at issue in the incident reports previously excluded.

19

## II.      Motion to Compel (Doc. 316).

Mr. Bearchild requests that this Court compel Mr. Pasha to produce a copy

of a document produced in discovery, STATE01820–STATE01824 (*Ex Parte* Doc.

320-2 at 2–6), without the redactions currently listed on pages STATE01821,

STATE01823–24 (*Id.* at 3, 5–6).  (*Ex Parte* Doc. 320 at 2, 18.)  Mr. Bearchild

argues that Mr. Pasha's asserted basis for the redactions (attorney-client privilege,

confidential personnel information, and privacy concerns) are either waived or

otherwise unavailing.  (*Id.* at 11–20.)  Mr. Pasha maintains the document has been

properly redacted, (Doc. 329 at 13–19), and has filed an unredacted copy under

seal which this Court has reviewed *in camera*.  (*Ex Parte* Doc. 331-1 at 1–5.)  The

Court will deny the motion.

As early as September 2015, Judge Johnston ordered Mr. Pasha to produce

"responsive documents regarding similar complaints, grievances, and lawsuits"

regarding himself.  (Doc. 34 at 9.)  In ordering such production, Judge Johnston

specifically permitted redaction of the identity of inmates filing such complaints,

grievances, or lawsuits.  (*Id.*)  Reconsideration of this ruling was sought and

denied.  (Docs. 35; 44.)  Resistance to Judge Johnston's order persisted and Mr.

Pahsa made additional redactions beyond inmate identifiers when producing such

documents.  (Doc. 190 at 7.)  Judge Johnston ordered that certain redactions be

removed but kept in place other redactions on the basis that they hid irrelevant

20

information.  (*Id.* at 10–11.)  In advance of the second trial, Mr. Pasha

supplemented his document productions to include additional complaints and

grievances.  As noted above, Mr. Bearchild challenges Mr. Pasha's redaction of

certain information on one of those PREA reports.

      The Court begins with the issue of waiver.  When Mr. Pasha produced the

redacted PREA report at issue, his corresponding privilege log only justified

redactions over the first paragraph (those redactions are not challenged by this

motion).  (*Ex Parte* Doc. 320 at 6–20.)  When Mr. Bearchild inquired about the

other redactions, Mr. Pasha belatedly justified them by claiming they were

protected by attorney-client privilege, constituted confidential personnel matters,

and implicated third-party privacy concerns.  (*Id.* at 8–9.)  By failing to include

these reasons in the original privilege log, Mr. Bearchild argues they are waived.

(*Id.* at 12–13, 18.)

      The Court declines to find that the mere failure to assert these protections in

a privilege log amounts to a waiver.  *Burlington N. & Santa Fe Ry. Co. v. U.S.

Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  The parties'

filings indicate that justifications in support of redacting the challenged portions of

the report at issue were inadvertently omitted from the original privilege log.  (*Ex

Parte* Doc. 318-3 at 2–13.)  The Court does not find that Mr. Bearchild has been

prejudiced by the delayed justification for the challenged redactions and prefers to address the matter on the merits.

Upon examining the redacted portions of the report at issue, the Court finds their nondisclosure proper.  As to the redactions on STATE01821 and STATE01824, the Court finds that they relate to confidential personnel matters separate from any relevant issue in this case or are the product of privileged attorney-client communications.  The Court also finds that STATE0123 similarly relates to confidential personnel matters irrelevant to this matter, even when construed under the broad definition of relevance applied in the discovery context. Based on the foregoing, the motion to compel will be denied.

Accordingly, IT IS ORDERED that Mr. Bearchild's motion in limine regarding his prior conviction (Doc. 309) is GRANTED to the extent it seeks exclusion of such evidence with respect to the issue of whether Mr. Pasha sexually assaulted Mr. Bearchild, with ruling reserved on the issue of whether such evidence is admissible as to his claim for emotional distress damages.

IT IS FURTHER ORDERED that Mr. Bearchild's motion in limine regarding specific opinions of Mr. Sheehan (Doc. 311) is GRANTED, as set forth previously in this Order.

IT IS FURTHER ORDERED that Mr. Pasha's motion in limine seeking exclusion of prior complaints (Doc. 315) is GRANTED in part and DENIED in part, as set forth previously in this Order.

IT IS FURTHER ORDERED that evidence contained within Mr. Bearchild's Rule 415 notice (*Ex Parte* Doc. 335-2) is ADMITTED in part and EXCLUDED in part, as set forth previously in this Order.

IT IS FURTHER ORDERED that Mr. Bearchild's motion to compel (Doc. 316) is DENIED.

DATED this 16th day of June, 2021.

Dana L. Christensen, District Judge
United States District Court